UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) No. PX-22-cr-00256 |
| | ) |
| DELONTE S. HERBERT, | ) |
| | ) |
| Defendant. | ) |
| | ) |

### DEFENDANT'S SENTENCING MEMORANDUM

### Introduction

On July 18, 2023, the Court is scheduled to sentence Mr. Herbert on one count of Unlawful Possession of Machineguns; in violation of 18 U.S.C. § 922(o); and Being a Felon in Possession of a Firearm; in violation of 18 U.S.C. § 922(g)(1).

Mr. Herbert is a 30 year-old man with virtually no history of violence. He has been on pretrial release in this matter for ten months, during which he has been in full compliance with his pretrial release conditions. He worked at a family business, where his family, once quite unstable, now has the resources to help support him in the community. Based on his exceptional performance on pretrial release, which demonstrates that further incarceration is not necessary to protect the public, Mr. Herbert asks this Court to impose a sentence of **37 months of incarceration,** followed by a reasonable period of supervised release. Though this sentence constitutes a nine-month downward variance from the relevant sentencing guidelines today, it would fall at the low end of the guideline range prescribed by anticipated upcoming changes to the Sentencing Guidelines, and is therefore sufficient, but not greater than necessary, to achieve the purposes of sentencing under 18 U.S.C. § 3553(a).

1

**I.     Mr. Herbert's personal history and characteristics reflect that though he once turned to the streets to support himself, he no longer needs to do so.**

Mr. Herbert was born on June 14, 1993, to his parents, Terry and Lakisha. Though he enjoyed four siblings, as his mother's only son, Mr. Herbert admits he was doted on as a young child. His mother worked hard to make ends meet and provide Mr. Herbert the type of life she believed he deserved. Unfortunately, the stability in Mr. Herbert's life did not persist.

When Mr. Herbert was seven years old, his parents separated, and Mr. Herbert's mother moved him from Washington D.C. to Maryland. The family struggled financially. Then, when Mr. Herbert was 13 years old, his mother was arrested. It was this arrest and her subsequent incarceration that caused Mr. Herbert to lose grounding. He was sent to live with his grandmother and she, unlike his mother, did not provide the same loving environment his mother had provided. He described living with her as "tough" and further describes her as a fierce disciplinarian.

The stress his grandmother and the rest of the family experienced from his mother's incarceration was all-encompassing, and is a well-known side effect of caregiver incarceration. *See* Ta-Nehisi Coates, *The Black Family in the Age of Mass Incarceration*, The Atlantic (Oct. 2015), ("By 2000, more than 1 million black children had a father in jail or prison—and roughly half of those fathers were living in the same household as their kids when they were locked up. Parental incarceration is associated with behavior problems and delinquency, especially among boys.").[1] Mr. Herbert felt abandoned by his mother, and never fully adjusted to living with his

---

[1]     Available at https://www.theatlantic.com/magazine/archive/2015/10/the-blackfamily-in-the-age-of-mass-incarceration/403246/.

grandmother. When his mother was released, two years later, Mr. Herbert returned to her care and custody. However, by that time, he was already quite damaged from the separation.

When Mr. Herbert, now fifteen years old, returned to his mother's care, he began to experiment with marijuana. He was attempting to rebound from the abandonment and reconnect with his mother who was trying to pick up the pieces of her own life. Around the same time, he began to have interactions with the criminal justice system. *See* PSR at ¶ 39. During that time, Mr. Herbert recalls being "wild" and susceptible to peer pressure.

Then, when Mr. Herbert was 16 years old, his father, who had previously worked as a truck driver and had provided for him financially, was also incarcerated for an extended period of time. This second parental incarceration only further fueled Mr. Herbert's feelings of abandonment. He began to act out more, eventually leaving high school and having even more interactions with the criminal justice system. *See* PSR at ¶ 42, 45, & 46. It was during this time that he had his three children, children he now hopes will not be caught in the same cyclical *déjà vu* of parental incarceration.

Despite these adverse circumstances, Mr. Herbert has always maintained a strong work history and ethic, demonstrated by his employment at FedEx, Giant Foods, and then in the food service industry. When his mother opened her own printing shop, Mr. Herbert began working there too, honing his craft as a sublimination technician. Some of his work is displayed below:





Throughout his pretrial release in the instant case, Mr. Herbert has demonstrated a respect for the rule of law and his ability to follow court orders by maintaining full compliance with all of his pretrial release conditions and working full-time at his mother's print shop. He attends substance abuse counseling and has had no illicit substances in his testing. He also worships every Friday at his local mosque and is in his children's lives, both emotionally and financially. In sum, Mr. Herbert may very well be of the class of offenders where deterrence has already been achieved. *See Five Things About Deterrence*, Nat'l Inst. Justice, U.S. Dep't of Justice (May 2016) ("Research underscores the more significant role that certainty plays in deterrence than

4

severity — it is the certainty of being caught that deters a person from committing crime, not the fear of being punished or the severity of the punishment.").[2] A sentence of more than 37 months of incarceration is not likely to substantively add to Mr. Herbert's already reformed and productive behavior.

## II. The nature and circumstances of this offense do not suggest Mr. Herbert is a violent person.

On January 13, 2023, the government filed a superseding information against Mr. Herbert alleging one count of Unlawful Possession of Machineguns; in violation of 18 U.S.C. § 922(o); and one count of Being a Felon in Possession of a Firearm; in violation of 18 U.S.C. § 922(g)(1). *See* ECF No. 28. On January 31, 2023, Mr. Herbert elected to plea guilty to the superseding information without the benefit of a plea agreement. *See* ECF Nos. 32-34. Mr. Herbert's offense conduct stemmed from two different incidents: one involving a search of his home, and one involving the search of his person a few days later. Though these offenses are related, and both involved firearms, there are distinct differences and mitigating details that warrant consideration.

First, discovery reflects that this investigation began because they had received a tip that Mr. Herbert was attempting to sell machinegun conversion devices. Based on that tip, detectives and officers from the Prince George's County Police Department executed a search and seizure warrant at Mr. Herbert's home in Capitol Heights, Maryland. Upon their entry, and located in a bedroom, officers observed five machinegun conversion devices in a dresser drawer. The devices were not attached to a firearm and no other firearm was located in the residence.

Though officers located the devices in Mr. Herbert's bedroom, there was no evidence Mr. Herbert was looking to make the devices operable. None of the devices were attached to firearms

---

[2] Available at https://nij.ojp.gov/topics/articles/five-things-about-deterrence.

and no other firearms were recovered from the home. In other words, the evidence reflected that Mr. Herbert was attempting to *sell* the devices, not to use them himself. Though this is a serious offense, no doubt, it reflects that Mr. Herbert, who was at that time working only part-time for his mother, was attempting to make a quick buck, not to commit any acts of violence.

Indeed, when law enforcement came several days later to execute the arrest warrant that arose from the search, Mr. Herbert had a firearm on his person, but it did not have a conversion device attached and it was not even of the type compatible with the devices found in his home. Finally, when Mr. Herbert was approached by officers outside his home, he was perfectly compliant with them, never wavering in his complete surrender. When questioned on the way to the station, Mr. Herbert took responsibility and honestly answered that he had the firearm for his own protection.

These are not the actions of a brutal antagonist with a firearm. They are the actions of a man simply trying to protect himself and make money by re-selling the devices that had been sold to him. As discussed below, the sentencing guideline calculation in this case accounts for the number and type of devices Mr. Herbert possessed. A sentence of 37 months of incarceration is an appropriate sanction for these offenses.

### III. Both the current Sentencing Guidelines and anticipated upcoming amendments reflect that a 37-month term of incarceration is an appropriate sanction in this case.

As discussed below, the 37-month term of incarceration Mr. Herbert requests in this case represents a modest downward variance from the existing Guideline calculation, but one that would result in a sentence within the Guidelines taking into account anticipated amendments scheduled to take effect in November of this year.

As the PSR reflects, Mr. Herbert's base offense level for Count 1 is 20, pursuant to

6

U.S.S.G. § 2K2.1(a)(4)(B), because the instant offense involved a firearm that is described in 26 U.S.C. § 5845(a) and he was a prohibited person at the time. Additionally, a two-level increase is applicable pursuant to U.S.S.G. § 2K2.1(b)(1)(B), because his offense involved between three and seven machinegun conversion devices. Further, for count two, Being a Felon in Possession of a Firearm, Mr. Herbert's base offense level is 20 because his offense involved a semiautomatic firearm that can accept a large capacity magazine, and he was a prohibited person at the time he possessed it. *See* U.S.S.G. § 2K2.1(a)(4)(B).

Pursuant to U.S.S.G. § 3D1.2, both counts one and two group, and therefore, his total adjusted offense level is 22. Because Mr. Herbert entered a timely plea of guilty and took full responsibility for his actions, his base offense level should be decreased by three (3) levels, pursuant to § 3E1.1(a) and (b). Thus, Mr. Herbert's final offense level is 19. Pursuant to the PSR, Mr. Herbert has a criminal history score of eight points, indicating a criminal history category of IV. With a base offense level of 19 and a criminal history category of IV, Mr. Herbert's indicated Guidelines range is 46 to 57 months of incarceration. A sentence of 37 months of incarceration, nine months below the low-end of his estimated Guidelines range is reasonable, even discounting the Guideline amendments discussed below, given that the Guideline calculation takes into account the full scope of Mr. Herbert's conduct and that he has performed exceptionally well on pretrial release.

Further, a sentence of 37 months of incarceration would avoid unwarranted sentencing disparities based on anticipated amendments to the United States Sentencing Guidelines. Pursuant to 18 U.S.C. § 3553(a)(4), the Court should consider the kinds of sentences and the sentencing range established for the applicable category of the defendant as set forth in the Guidelines. These applicable categories are, "subject to any amendments made to such

guidelines by an act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments) and . . . that are in effect on the date the defendant is sentenced." 18 U.S.C. § 3553(a)(4)(i) & (ii).

In April 2023, *after* Mr. Herbert elected to plea guilty, the United States Sentencing Commission unanimously promulgated an amendment to U.S.S.G. § 4A1.1 to address "status points," *i.e.*, "additional criminal history points given to offenders for the fact of having committed the instant offense while under a criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status."[3] The amendment reduced the enhancement from two points to one, and limited it "to offenders. . . [that] have seven or more criminal history points . . . in addition to having been under a criminal justice sentence at the time of the instant offense."[4] The Commission's amendment reflects its data-driven conclusion that "status points add little to the overall predictive value associated with the criminal history score."[5] Absent an act of Congress, the new amendment will take effect on November 1, 2023, meaning that those similarly situated to Mr. Herbert who are sentenced after November 2023 will have status points added to their criminal history scores.

As stated above, Mr. Herbert has a total of six criminal history points, to which two points were added to reflect that, at the time of the offense, he was under supervision. *See* PSR ¶ 49. This resulted in a total criminal history score of eight, which established a criminal history

---

[3]   *See* United States Sent'g Comm'n, *Amendments to the Sentencing Guidelines*, 71 (Apr. 27, 2023), https://bit.ly/41QO5It.

[4]   *Id*. at 77.

[5]   *Id*.; *See* United States Sent'g Comm'n, *Revisiting Status Points* (June 2022), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2022/20220628_Status.pdf ("Those who received status points were rearrested at similar rates to those without status points who had the same criminal history score.").

category of IV. *Id*. However, without the two additional status points, Mr. Herbert would be in criminal history Category III, resulting in a Guidelines range of 37 to 46 months of imprisonment. It would simply be disparate treatment for Mr. Herbert, who just happened to enter a plea and be sentenced four months before this change, to be subjected to a since-rejected provision of the sentencing Guidelines. This Court should vary downward to be consistent with others sentenced going forward, for the same crime, with the same criminal history.

Further, according to Judicial Sentencing Information (JSIN), during the last five fiscal years (FY2018-2022), there were 947 defendants whose primary guideline was §2K2.1, with a Final Offense Level of 19 and a Criminal History Category of III. After excluding defendants who received a §5K1.1 substantial assistance departure, the average of the 920 defendants (97%) who received a sentence of imprisonment, were sentenced to 35 months of incarceration, with 37 months serving as the median.[6] A sentence at the average and median sentences for similarly placed defendants would not create a disparity, much less an unwarranted one. And, as discussed above, there is nothing in Mr. Herbert's offense conduct or history and characteristics that would support a sentence above the average and median sentence for these offenses.

**Conclusion**

A sentence of 37 months of incarceration, and a reasonable term of supervised release is sufficient, but not greater than necessary, to achieve the purposes of sentencing in this case. Such a sentence accounts for sentencing disparities created by the new Guidelines amendments, the full scope of Mr. Herbert's offense conduct, and Mr. Herbert's history and characteristics. It also balances the need for punishment and deterrence, while still acknowledging the productivity Mr. Herbert has displayed while on pretrial release.

---

[6]   *See* https://jsin.ussc.gov/analytics/saw.dll?Dashboard (accessed June 20, 2023).

Therefore, after considering all the facts of this case, his individual characteristics, and all the relevant 18 U.S.C. § 3553(a) factors, Mr. Herbert requests this Court impose a sentence of 37 months of incarceration, followed by a reasonable period of supervised release.

Respectfully submitted,

JAMES WYDA
FEDERAL PUBLIC DEFENDER

_____/s/_____
CARA HALVERSON
LAURA GINSBERG ABELSON
Assistant Federal Public Defenders
6411 Ivy Lane, Suite 710
Greenbelt, Maryland 20770
301-344-0600
cara_halverson@fd.org
laura_abelson@fd.org